UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EARL OTIS PEYTON, JR., | ) |
| Plaintiff(s), | ) ) ) |
| v. | ) ) Case No. 4:21-cv-00631-SRC |
| C.O. ROBINSON, et al., | ) ) ) |
| Defendant(s). | ) ) |

**Memorandum and Order**

Alleging he fell and broke his knee after correctional officers sprayed him with mace, handcuffed him, and ordered him to descend a staircase unassisted, inmate Errol Peyton, Jr. filed this section 1983 lawsuit against two correctional officers, Jermel Robinson and Keeosha Conley. The Court ordered Robinson and Conley to respond to what the Court construed as Peyton's punitive-conditions-of-confinement claim. Robinson and Conley filed a motion for summary judgment, which the Court grants.

**I.  Background**

**A.  Procedural history**

At the time of the events giving rise to his claims, Peyton was a pretrial detainee at the St. Louis City Justice Center. *See* Doc. 12 at p. 2; Doc. 14 at p. 1 (taking judicial notice of state court records). Peyton initiated this civil action by filing a 42 U.S.C. § 1983 action against the "City of St. Louis Department of Public Safety Division of Corrections," and against correctional officers Robinson and Conley in their official capacities. Doc. 1. Upon initial review, the Court determined that Peyton's Complaint was subject to dismissal in its entirety but gave Peyton the opportunity to file an amended complaint. Doc. 11.

Peyton then filed an Amended Complaint, bringing official- and individual-capacity claims against correctional officers Robinson and Conley. Doc. 12. Upon review of Peyton's Amended Complaint, the Court dismissed Peyton's official-capacity claims, as well as his individual-capacity claims regarding an alleged lack of proper medical care. Doc. 14 at pp. 5–6. Only Peyton's individual-capacity punitive-conditions-of-confinement claims survived initial review. *Id.* Defendants moved for summary judgment. Doc. 27. Peyton failed to respond.

B.  **Uncontroverted material facts**

Defendants, in accordance with the Court's Local Rules, submitted a Statement of Uncontroverted Material Facts. Doc. 29. Peyton did not file a response, and the time for him to do so has long since run. Local Rule 4.01(E) provides:

> (E) Every memorandum in support of a motion for summary judgment must be accompanied by a document titled Statement of Uncontroverted Material Facts . . . . Every memorandum in opposition must be accompanied by a document titled Response to Statement of Material Facts . . . . The Response must set forth each relevant fact as to which the party contends a genuine issue exists. The facts in dispute shall be set forth with specific citation(s) to the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from the moving party's Statement of Uncontroverted Material Facts. *All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party*.

E.D. Mo. L.R. 4.01(E) (emphasis added). Even pro se litigants must comply with substantive and procedural law, including the Court's Local Rules. *Farnsworth v. City of Kansas City*, 863 F.2d 33, 34 (8th Cir. 1988); *Bunch v. Univ. of Arkansas Bd. of Trustees*, 863 F.3d 1062, 1067 (8th Cir. 2017).

Although Peyton failed to respond to Defendants' Statements of Uncontroverted Material Facts, the Court does not automatically grant summary judgment for Defendants. Instead, the Court deems the facts set forth in Defendants' statement admitted pursuant to Local Rule 4.01(E) and Rule 56(e)(2) of the Federal Rules of Civil Procedure. *Reasonover v. St. Louis County*, 447

F.3d 569, 579 (8th Cir. 2006). Defendants must still establish that they are entitled to judgment as a matter of law. *Id.* Accordingly, the undisputed facts, as set forth in Defendants' Statement of Uncontroverted Material Facts, are as follows:

On November 20, 2020, Jermel Robinson was a Correctional Officer I at the City of St. Louis Justice Center, Doc. 29 at ¶ 3, and Keeosha Conley was a Correctional Officer II, Lieutenant, *id.* at ¶ 1. On that date, Lt. Conley received notice over the radio of a physical altercation on the mezzanine level of housing unit 4-Charlie. *Id.* at ¶ 2. Officer Robinson also received notice of a fight in housing unit 4-Charlie and responded. *Id.* at ¶ 4. Officer Robinson responded to cell number 25, on the mezzanine level of the unit, where he observed detainees Demitris Purnell and Peyton engaged in a fight. *Id.* at ¶¶ 5–6.

Officer Robinson gave several directives to Purnell and Peyton to stop fighting. *Id.* at ¶ 7. Lt. Conley observed Officer Robinson give directives to Purnell and Peyton to stop fighting and to get on the ground. *Id.* at ¶ 8. When Purnell and Peyton ignored Officer Robinson's directives and continued to fight, Officer Robinson sprayed both detainees in the face with Oleoresin Capsicum (OC) spray. *Id.* at ¶ 9. Department policy defines OC spray as "a Pepper Spray and a class of chemical agents which when applied on a person are capable of incapacitating the person." Doc. 29-4 at p. 2. Purnell and Peyton continued to fight. Doc. 29 at ¶ 10. Officer Robinson sprayed both detainees a second time with OC spray. *Id.* Each burst of OC spray lasted one second. Doc. 29-5 at p. 5. Despite the second burst of OC spray, the fight continued until Peyton voluntarily left the cell and submitted to handcuffs. Doc. 29 at ¶¶ 11–12; Doc. 29-2 at ¶ 9.

Officer Robinson handcuffed Peyton and escorted him from the mezzanine level to the lower level of the housing unit, heading to medical for decontamination per City of St. Louis

3

Department of Public Safety policy. Doc. 29 at ¶ 12; Doc 29-2 at ¶ 11; Doc. 29-4 at p. 5 (Department policy stating that after the use of OC spray, "[o]nce the inmate is under control, Correctional Officers escort the inmate to the Medical Unit for treatment."). Another correctional officer similarly handcuffed Purnell and escorted him out of the housing unit to medical. Doc. 29 at ¶ 11. Officer Robinson had one hand on Peyton's arm and the other hand on the railing, assisting Peyton as Peyton began walking down the staircase. *Id.* at ¶ 13; Doc. 29-3 (twenty-second security camera video of the incident). Peyton immediately fell as he took his first step down the staircase. Doc. 29 at ¶ 14; *see also* Doc. 29-3 at 00:10–00:13. Officer Robinson quickly walked down the staircase to assist Peyton. Doc. 29 at ¶ 15. Officers called a "code 3," and medical staff responded to the unit to assist Peyton, ultimately transporting him to St. Louis University Hospital for treatment. *Id.* at ¶¶ 16–17.

**II.     Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Even if a motion for summary judgment on a particular claim stands unopposed, the district court must still determine that the moving party is entitled to judgment as a matter of law on that claim." *Interstate Power Co. v. Kansas City Power & Light Co.*, 992 F.2d 804, 807 (8th Cir. 1993). In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *See AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the initial burden of showing both the absence of a genuine issue of material

4

fact and entitlement to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(a).

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. Discussion

Defendants argue that they are entitled to qualified immunity because Peyton "cannot set forth evidence sufficient to establish an unconstitutional condition" and "because their conduct comported with and did not violate clearly established law."  Doc. 28 at p. 2.  The Court agrees.

"Qualified immunity shields a government official from liability and the burdens of litigation unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Truong v. Hassan*, 829 F.3d 627, 630 (8th Cir. 2016) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Evaluating whether a government official is entitled to qualified immunity requires a two-step inquiry:  (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  "Courts have discretion to decide which part of the inquiry to address first."  *Id.* (citing *Pearson*, 555 U.S. at 236).

As the Court previously noted when reviewing Peyton's Amended Complaint, *see* Doc.

5

14 at p. 4, the Supreme Court has determined that the government may detain defendants before trial and "subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520, 536–37 (1979).  The Supreme Court has articulated two ways to determine whether conditions rise to the level of punishment.  First, a plaintiff can show that his or her conditions of confinement were intentionally punitive.  *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 907 (8th Cir. 2020) (citing *Bell*, 441 U.S. at 538–39).  Second, in lieu of an "expressly demonstrated intent to punish," a plaintiff can "also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose."  *Id.*  If a court finds that conditions are arbitrary or excessive, it may infer that the purpose of the governmental action was unconstitutionally punitive.  *Id.*

In this case, the Court required Defendants to respond to Peyton's allegations that "he fell and broke his knee after he was maced, handcuffed with his hands behind his back, and then ordered to descend a staircase unassisted in that significantly compromised condition."  Doc. 14 at p. 5.  The Court determined that these allegations described potentially punitive conduct.  *Id.*  However, the uncontroverted material facts at the summary-judgment stage—reinforced by the video evidence of the incident—paint a different picture.

Peyton does not controvert that after he and Purnell ignored Officer Robinson's directives to stop fighting and to get on the ground, Officer Robinson sprayed both detainees in the face with OC spray.  Doc. 29 at ¶¶ 7–9.  When the detainees continued to fight, Officer Robinson sprayed them both a second time.  *Id.* at ¶ 10.  Each burst of OC spray lasted one second.  Doc. 29-5 at p. 5.  After the second burst of OC spray, Peyton voluntarily left the cell and Officer Robinson handcuffed Peyton before escorting him towards medical for decontamination, in

6

accordance with City of St. Louis Department of Public Safety policy. *Id.* at ¶ 11; Doc. 29-4 at p. 5 (stating that after using OC spray, "[o]nce the inmate is under control, Correctional Officers escort the inmate to the Medical Unit for treatment"). While Officer Robinson escorted Peyton down the stairs toward medical—with one hand on Peyton's arm, and the other hand on the railing—Peyton slipped and fell. Doc. 29 at ¶ 13; Doc. 29-3 at 00:10–00:13. Nothing in the video suggests that Officer Robinson did anything to cause or even precipitate Peyton's slipping or falling. *See* Doc. 29-3.

These uncontroverted facts do not support an "expressly demonstrated intent to punish." *See Stearns*, 957 F.3d at 907. Contrary to Peyton's claim, Officer Robinson did not order Peyton to walk down a flight of steps unassisted while Peyton "was maced" and his hands were handcuffed behind his back. Doc. 12 at p. 3. Rather, Officer Robinson held Peyton's arm and the railing while escorting Peyton down the steps toward medical for Department-policy-mandated decontamination. Further, handcuffing and escorting a detainee to medical for treatment following use of OC spray on that detainee "is reasonably related to a legitimate governmental objective"—namely, ensuring the health and safety of the detainee himself, as well as other correctional officers and detainees along the way. *See Bell*, 441 U.S. at 540 ("Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial.")

Additionally, although Peyton does not specifically allege that Defendants used excessive force against him in violation of the Fourteenth Amendment's Due Process Clause, Defendants briefly address the issue. Doc. 28 at p. 7. Whether the application of force is unreasonable "turns on the 'facts and circumstances of each particular case.'" *Kingsley v. Hendrickson*, 576

7

U.S. 389, 397 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  The Court must assess the actions of each officer "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*  In making this assessment, the Court considers factors including:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.*

Applying these factors, the Court concludes that, under the circumstances, Defendants' use of handcuffs and two one-second bursts of OC spray was not an objectively unreasonable use of force.  *See Kingsley*, 576 U.S. at 391–92; *Graham*, 490 U.S. at 396.  Accordingly, to the extent that Peyton raises an excessive-force claim, the Court grants Defendants summary judgment on that claim.

Additionally, Peyton does not allege that Conley was personally involved in his injuries; at most, he alleges Conley failed to supervise or failed to intervene.  *See* Doc. 12 (alleging that Conley witnessed Officer Robinson order Peyton to walk down the flight of steps, and did not order Officer Robinson to assist him).  However, as the Court concludes that no underlying constitutional violation occurred, any failure-to-supervise or failure-to-intervene claim against Conley also fails.

Finally, the Court does not address Peyton's claim that Defendants were negligent, Doc. 12 at p. 5, because "liability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process." *Kingsley*, 576 U.S. at 396 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)); *see also Buckley v. Hennepin Cnty.*, 9 F.4th 757, 762 (8th Cir. 2021) (quoting *Kingsley*, 576 U.S. at 396).

8

In sum, the uncontroverted facts do not "make out a violation of a constitutional or statutory right"; thus, Defendants are entitled to summary judgment based on the first part of the qualified-immunity inquiry, and the Court need not address the second. *Truong*, 829 F.3d at 630.

## IV.    Conclusion

For the foregoing reasons, the Court grants Defendants' [27] Motion for Summary Judgment and enters judgment in favor of Robinson and Conley on Peyton's punitive-conditions-of-confinement and excessive-force claims, dismissing Peyton's claims with prejudice. A separate judgment accompanies this memorandum and order. The Court certifies that an appeal from this dismissal would not be taken in good faith.

So Ordered this 5th day of April 2023.

*SLR.CR*

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE